IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:07CR 3117 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| SANTIAGO ALMAZAN-RIOS, | ) | REPORT, RECOMMENDATION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

A hearing was held before the undersigned on October 30, 2007 on the defendant's motion to suppress evidence. The matter arises from an indictment charging defendants with possessing with intent to deliver 50 grams or more of a substance containing methamphetamine. The motion challenges a search of the defendant's Grand Island, Nebraska motel room on August 21, 2007. I make the following findings and recommendations.

FACTS

Investigator Ross Lyon of the Nebraska State Patrol testified that the Tri-City Drug Task Force on that date was working on arranging a "controlled purchase" of methamphetamine from co-defendant Johnny Vega, using a confidential informant. The informant made contact with Vega that afternoon, and gave him the money for the purchase. Vega and the informant then went to a Motel 6 about 3:45 p.m. and parked in the parking lot. Vega entered Room 227 and a few minutes later called the informant to instruct her to come into the room. The informant did so, and

was given approximately 11 grams of a substance that tested positive for methamphetamine.  After the delivery the informant stated to investigators that another Hispanic male, known to her only as "Pelon," was in the room.

Jeffrey Shelton, another investigator with the Nebraska State Patrol assigned to the Tri-City Drug Task Force, had participated in audio surveillance of the controlled purchase from Vega that afternoon.  He knew about the investigation of Vega and thought that if the officers could gain access to the motel room, they might find additional quantities of methamphetamine.  Shortly before 5:00 p.m.[1] he went to the motel desk before the other officers approached room 227.  He asked the attendant for the room receipt for room 227, which was provided.  The room was rented in the defendant's name.  Defendant had just changed rooms; the prior night he had stayed in a room registered to a Sonny Garcia.  The vehicle seen in the motel parking lot was registered to Sonny Garcia.

Investigators determined that Vega had an outstanding warrant for his arrest, and decided to approach the room to effect his arrest.[2]  At approximately 5:00 p.m. several officers approached the door to room 227.  Lyon and Shelton were the first two officers at the door, with Lyon in front.  Three other

---

[1] Because Shelton was a member of the team that entered the motel room, and because he obviously could not be two places at once, I infer that he went to the motel desk *before* he participated in the entry of the room, although the testimony was not explicit in this respect, describing the time as "about" or "approximately" 5:00 p.m. for both events.

[2] No officers remained at the motel with the entry to room 227 under surveillance during the interim between 4:00 p.m., when they left, and their return at approximately 5:00 p.m.

-2-

officers stood immediately behind them.  All officers were armed and had badges visible.  They were also dressed in clothing marked "Police" or similar clothing identifying them as law enforcement officers.  At least Lyon and Shelton had their guns out of their holsters, but not raised.

Lyon knocked on the door and announced, "Maintenance."  Defendant opened the door wide.  Lyon immediately identified them as police officers, and asked, "Is Johnny Vega here?"  Defendant said, "Johnny?  Sure."  He then turned slightly toward the inside of the room and said, "Johnny, it's for you."

Lyon and Shelton immediately entered the room.  Vega was standing behind a wall inside the room.  When Lyon saw him, Lyon immediately told him he was under arrest, and Lyon and Shelton took Vega to the floor and cuffed him.  In that process Lyon and Shelton both saw directly behind Vega on the floor two bongs of the type used for smoking methamphetamine, each with powder residue, a digital scale, and other drug paraphernalia.  Lyon searched Vega's person and found several small baggies typical of those commonly used in drug dealing.  Vega said, "What I have on me is mine; the rest is his," presumably referring to the defendant; however, when asked, Vega made no further comments.

The room was very small, containing only one double bed which was approximately three or four feet from the entrance where the officers entered, and only about one foot from the far wall.  It also had a small bathroom.

Meanwhile, after the defendant said, "It's for you," Lyon instantly "passed him back" to the officers standing behind Lyon at the doorway or in the hall.  Defendant was cooperative.  Mark

Dreher, an investigator with the Grand Island Police Department, contacted defendant in the hallway.  Dreyer explained to defendant that he would be searched and cuffed for officer safety reasons due to the fact that Vega was being arrested and had a history of violence.  Upon conducting a pat-down search of the defendant, Dreyer discovered a wallet with cash in it and a baggie containing what the officer thought was methamphetamine.  Defendant was cooperative and did not resist in any way.

   No search warrant was obtained for room 227, and upon defendant's opening the door, the officers did not ask for consent to search the room.  At no time did defendant revoke any implied consent to search the room.  All officers were at all times armed with guns, at least some of which were out of their holsters, although the weapons were not "brandished."  All conversation was in English.

   Shelton testified that he had not sought a search warrant for search of room 227 because the officers had an outstanding arrest warrant for Vega, and knew that the room was small, that is, that just prior to his arrest, Vega would have had access to all parts of it, and unless restrained would continue to have access to it.  Thus, Shelton apparently reasoned that any search of the room would be incident to Vega's arrest.

   After Vega was on the floor and cuffed, and the defendant was outside the room also cuffed, the officers searched the room.  Investigator Shelton found a small zippered suitcase on the floor between the bed and the wall farthest from the doorway; Shelton placed the suitcase on the bed, nearly dumping its contents because it was not zipped shut.  He opened the suitcase and discovered a loaded handgun, ammunition, a Motel 6 receipt, and

-4-

approximately one-half pound of methamphetamine.  Found elsewhere in the room were a sales receipt for sale of a vehicle to Sonny Garcia, and another digital scale.

PARTIES' POSITIONS

Defendant argues that the door to the motel room was answered only in response to the officers' show of authority, and, therefore, there was no valid consent given by defendant for the officers' entry into the room.  Defendant claims that in the absence of a warrant or defendant's consent, the officers' entry into the room violated his rights under the Fourth Amendment, citing United States v. Connor, 127 F.3d 663 (8th Cir. 1997).

The government argues that the defendant's opening the door and turning slightly to say to Vega, "It's for you" were acts from which reasonable officers could infer that they had been given consent to enter the room.  The government also argues that prior to their entry, the officers had probable cause to believe that evidence of a crime was in the room and exigent circumstances existed justifying the warrantless search.  The government also argues that the search was a valid search incident to Vega's arrest.  Finally, the government argues that the search should be upheld on the "inevitable discovery" rule, because had defendant not consented to their entry and search, and if exigent circumstances did not exist, the officers would have secured the room and sought a search warrant based on Vega's outstanding arrest warrant and their belief he was still in the room.

DISCUSSION

The Supreme Court has long recognized that the constitutional protection against unreasonable searches and seizures of a home or an apartment apply with equal force to a person's privacy in a temporary dwelling place such as a hotel room. Stoner v. California, 376 U.S. 483, 490 (1964); United States v. Rambo, 789 F.2d 1289, 1295 (8th Cir. 1986). Defendant, as the renter of the room, had a legitimate expectation of privacy in the motel room, and may claim the protections of the Fourth Amendment from unreasonable search thereof.

### Existence of the Arrest Warrant

> The Supreme Court held in Payton v. New York, 445 U.S. 573 (1980) "that police officers do not need a search warrant to enter the home of the subject of an arrest warrant in order to effectuate the arrest." United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999). An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. Steagald v. United States, 451 U.S. 204 (1981). In Steagald, police entered the defendant's home without a search warrant to arrest a third-party suspect. While there, police seized drugs that were in the defendant's possession. Applying Steagald, we held that in the absence of exigent circumstances or consent, a law enforcement officer could not legally search for the subject of an arrest warrant in the home of a third party, without first obtaining a search warrant. Steagald, 451 U.S. at 215-16; see also, United States v. Davis, 288 F.3d 359, 362 (8th Cir. 2002).

United States v. Powell, 379 F.3d 520, 523 (8th Cir. 2004). See also United States v. Risse, 83 F.3d 212, 215 (8th Cir. 1996).

The officers had been told there was an outstanding arrest warrant for Johnny Vega. Additionally, they knew he had two hours earlier sold the confidential informant 11 grams of methamphetamine. Although the informant had told them there was another male, "Pelon," in the room, the officers knew only that that person may be the owner of the vehicle they had spotted in the parking lot, and/or had registered for the room.

In United States v. Junkman, 160 F.3d 1191 (8th Cir. 1998) police had an arrest warrant for Kent Junkman, whom they thought (reasonably) was "residing" in a motel room. In fact, it was his brother, Curtis, the defendant. Police entered the room with a passkey given them by the motel desk clerk after no one answered the door and they heard a commotion inside after they'd knocked and announced their presence.

> As earlier indicated, the officers entered the room in order to find Kent Junkman. He was the object of the arrest warrant. As long as the officers reasonably believed Kent Junkman was a co-resident of the room, the entry into the room to arrest Kent Junkman was a reasonable one. See Steagald, 451 U.S. at 214 n. 7.

160 F.3d at 1194. Since there was no evidence to the effect that the room had been registered in Vega's name or otherwise that he "resided" in the room, Junkman is distinguishable. Although it would be reasonable for officers to believe under these circumstances that Vega was likely present in the room, I have found no cases indicating that such a belief alone, even if reasonable, is sufficient to permit officers to enter a third party's motel room to arrest the subject of a warrant, absent either consent or exigent circumstances.

Consent

First, the government contends that the actions of defendant in opening the motel room door, turning, and saying, "Johnny, it's for you" were acts from which a reasonable officer could infer consent to enter in search of Johnny Vega. Consent is a question of fact, derived from consideration of the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973); United States v. Willie, 462 F.3d 892, 896 (8th Cir. 2006); United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980). United States v. Kampbell, 574 F.2d 962, 963 (8th Cir. 1978).

> Our case law offers a catalogue of factors to consider in judging the voluntariness of a defendant's consent to search. Some relate to the characteristics and behavior of the defendant, such as the defendant's age, intelligence and education, knowledge of his constitutional rights (whether from Miranda warnings in the encounter at issue or from previous interactions with police), whether he was under the influence of drugs or alcohol, and whether he objected to the search or stood by silently as it was occurring. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Others relate to the environment surrounding the defendant at the time he gave his consent, such as whether he was in custody or under arrest and whether he was in a public or secluded place. Id. Still others relate to the interaction between police and the defendant in the encounter, such as whether police officers detained and questioned the defendant for a long time before obtaining his consent, whether they threatened, physically intimidated, or punished him, and whether they made promises or misrepresentations upon which the defendant relied in giving his consent. Id. No one factor is dispositive; they are merely tools for analyzing the "totality of all the circumstances." Bustamonte, 412 U.S. at 227.

Willie, 462 F.3d at 896.

-8-

In this case there are factors which would auger against a finding of voluntary consent.  For example, the fact that the officers were in riot gear with guns unholstered certainly would appear to make the atmosphere "police dominated" and "intimidating."  In addition, Lyon used the ruse of "maintenance" to elicit the opening of the motel room's door.  On the other hand, there were other factors from which voluntariness of consent to enter could be inferred:  Defendant opened the motel room door without asking who was there; he opened the door wide, not just a crack; when the officers identified themselves, he did not attempt to close the door; when they asked if Vega was there, he responded, "Johnny?  Sure" and looked or pointed back toward the inside of the room; he was not under arrest, or promised anything, or forcefully wrestled to the floor; he was "passed back" by the officers without resistance; he cooperated with officers at all times; and he never objected to the officers entering the motel room or searching for Vega.[3]

Even if the evidence were insufficient to justify a reasonable officer from drawing an inference that defendant consented to their entering his room to search generally, the evidence most certainly supports a reasonable inference by officers that he was consenting to their entry *for the limited purpose of searching for Vega*.  That is, defendant could have reasonably inferred from the officers' question, "Is Johnny Vega here?" that their purpose was limited to contacting Vega and nothing else would be done if defendant merely cooperated with that activity.  Even if defendant intended to so limit the scope

---

[3] Other than the fact that all the conversations with the defendant were in English, the record is silent as to any of the defendant's own characteristics that might bear on the voluntary consent issue.

of his consent, however, the officers were reasonable in believing he had consented to their entry for at least that limited purpose, and they did not exceed the scope of that limited permission to enter until after they had discovered the drug paraphernalia in plain view.

In <u>United States v. Williams</u>, 346 F.3d 796 (8th Cir. 2003) officers entered a motel room registered to defendant's wife in search of him; they had been told he had an arrest warrant outstanding.  The court of appeals found no error in crediting the officers' testimony that after they asked permission to enter the room, she stepped back, opened the door further, and said something like "Okay."  They entered, found him, checked on the existence of a warrant, and when it was confirmed, arrested him. They then did a search incident to arrest of only the area within defendant's armspan, finding the firearms which were the basis for his conviction.  In upholding the officers' inference of consent, the court of appeals found that a reasonable officer in their position could have inferred consent from these circumstances.  346 F.3d at 799 (citing <u>United States v. Mendoza-Cepeda</u>, 250 F.3d 626, 627-29 (8th Cir. 2001)).

To be sure, the situation was not without ambiguity, but in my view inferring that defendant had consented for them to enter the room was within the range of reasonable inferences officers were entitled to draw from the circumstances.  The entry did not violate the Fourth Amendment.

Search Incident to Arrest

At the time Vega was arrested and taken to the floor, officers quickly perused the room for other occupants and then proceeded to search the room for evidence and/or weapons once both Vega and the defendant had been secured. A suitcase was found on the floor along the wall farthest from the entrance, in which were found items forming the subject of the present charges. In addition, on Vega's person they discovered baggies and methamphetamine.

The "incident-to-arrest" exception to the warrant requirement was defined in Chimel v. California, 395 U.S. 752 (1969) as permitting a search of the area around the arrestee which was in his "immediate control," that is, into which the arrestee might reach to obtain a weapon or destroy evidence. Id. at 763. It was expanded later in New York v. Belton, 453 U.S. 454 (1981) to include search of an automobile passenger compartment, including containers therein, upon the arrest of an occupant. Recently this exception was expanded to include a person who had exited a vehicle before being contacted by police. United States v. Thornton, 541 U.S. 615 (2004). The Eighth Circuit Court of appeals has applied the exception to searches of hotel rooms in similar circumstances performed after a defendant's arrest, even though he may not have had actual access to all of the areas searched. See, e.g., United States v. Williams, supra; United States v. Palumbo, 735 F.2d 1095 (8th Cir. 1984), cert. denied, 469 U.S. 934 (1984).

The search here clearly fits within the incident-to-arrest exception to the warrant requirement. The room was small and even though its occupants were cuffed and defendant had been

-11-

removed, the officers knew Vega had a history of carrying weapons and violence.  Even though he was, at the time of the search, under control, nevertheless he was still within the confines of the room; had he escaped the officers' hold, he would have had immediate access to the gun in the suitcase.

### Plain View

Once the officers were lawfully in the motel room, their discovery of the bongs and other paraphernalia on the floor behind Vega activated the "plain view" doctrine.  <u>United States v. Boyd</u>, 180 F.3d 967, 976 (8th Cir. 1999) (citing <u>United States v. Evans</u>, 966 F.2d 398, 400 (8th Cir.1992)(holding the plain view doctrine permits seizure of an item if police are lawfully in position to observe the item and if its incriminating character is immediately apparent).  That discovery gave them probable cause to search the room for other evidence.

Coinciding with these events was the search of the defendant's person in the hallway for officer safety.  Once methamphetamine was discovered on his person, officers had probable cause to arrest defendant and to search the entire room as incident to that arrest.  <u>United States v. Williams</u>, <u>supra</u>.

### Exigent Circumstances

Although the government appears to argue that exigent circumstances justified their entry into the motel room without the defendant's consent, because of my findings above, I conclude that it is unnecessary to address that argument.  That said, I

have serious doubts that exigent circumstances did exist.  The officers did not have the room under surveillance for a one-hour period before they entered; that is, they did not know for a fact that the room was even occupied.

In addition, even if they had had that knowledge, it is reasonable to assume that drug dealers would not be attempting to flush their stash of "merchandise" in the absence of some police presence.  They had already conducted the controlled purchase to the confidential informant with no police intervention immediately following the event.  There is no evidence that the two defendants had any suspicion that the police were preparing to enter the room until Investigator Lyon identified them as police officers after defendant opened the door.  That situation was police-created.  United States v. Johnson, 12 F. 3d 760 (8th Cir. 1993), cert. denied, 512 U.S. 1211 (1994); See also United States v. Duchi, 906 F.2d 1278, 1284 (8th Cir. 1990), citing United States v. Johnson, 904 F. 2d 443 (8th Cir. 1990) (Officers' opportunity to obtain warrant and their investigative techniques examined in determining applicability of exigent circumstances; police cannot benefit from their own creation of exigent circumstances); compare United States v. Leveringston, 397 F. 3d 1112, 1115 (8th Cir. 2005) (Applying objective test, reasonable officer could believe exigent circumstances existed when there was probable cause to search, and police, after knocking and announcing their presence at door of hotel room, heard loud crashes and water running and saw individual running from the hotel room window who, when apprehended, possessed key card to room and whose hand and shirt were covered in blood). United States v. Palumbo, 735 F.2d 1095 (8th Cir. 1984), cert. denied, 469 U.S. 934 (1984) (Officers' plan to obtain warrant after controlled purchase of cocaine from hotel room was thwarted

by seller announcing during purchase that he would accompany confidential informant to the "buyer's" room which was actually occupied by officers; their fear that arresting the seller in that room would cause seller's accomplice to destroy cocaine gave rise to exigent circumstances justifying their warrantless entry into the seller's room to effectuate arrests).

The exigent circumstances exception to the warrant requirement is narrowly drawn and applies only if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed.  United States v. Ball, 90 F.3d 260, 262 (8th Cir. 1996) (Exception applied when suspect fled into residence after narcotics sale, attempting to escape).  In this case while it may be said that once the police entered the motel room, evidence was in danger of being destroyed, there is no evidence that it was about to be destroyed *before* they entered, and further, no evidence of anything that prevented them from applying for a search warrant in the hour between the debriefing of the confidential informant and their entry into the room, had they chosen to apply for a warrant instead of entering.

### Inevitable Discovery

Under the inevitable discovery doctrine, evidence that would have been discovered "through independent, lawful means should be admitted so that the prosecutor is put in the same, not worse, position as though the original illegality had not occurred." United States v. Madrid, 152 F.3d 1034, 1037-38 (8th Cir. 1998)(citing Nix v. Williams, 467 U.S. 431, 442-43 (1984)).  In evaluating the evidence, the focus is on what the officers would likely have done had the unlawful search not occurred.  The

-14-

government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.  <u>United States v. Villalba-Alvarado</u>, 345 F.3d 1007, 1019-20 (8th Cir. 2003).

     Because of my finding that the officers' entry into the room was consensual, there is no need to address this argument.  From the above discussion, however, it is apparent that once the bongs, baggies, and suspected drugs were found either in plain view or on the persons of the defendants, officers had probable cause to search the premises.  If they had not immediately searched the room, they would have applied for and received a search warrant after the defendants had been removed, and secured the room in the meantime until the warrant could be executed.  The items in the suitcase would have been discovered and seized in such a search.

     Accordingly,

     IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, that the motion to suppress, filing 26, be denied in all respects.

     The parties are notified that failure to object to this recommendation in accordance with the local rules may result in loss of the opportunity to challenge the factual findings herein on appeal.

     FURTHER, IT HEREBY IS ORDERED, Trial of this matter is set to commence at 9:00 a.m. on January 14, 2008 before the Hon.

Richard G. Kopf, United States District Judge.  Jury selection will be at commencement of trial.  Trial is scheduled for a duration of four trial days.

Dated November 15, 2007

BY THE COURT

s/ *David L. Piester*
United States Magistrate Judge